**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| DARLENE GIBBS, et al. | : | CIVIL ACTION |
| | : | |
| *Plaintiffs,* | : | |
| | : | NO.  3:18-cv-00048-MHL |
| v. | : | |
| | : | |
| HAYNES INVESTMENTS, LLC, et al., | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS HAYNES INVESTMENTS, LLC, L. STEVEN HAYNES, AND**
**SOVEREIGN BUSINESS SOLUTIONS, LLC'S**
**<u>MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12</u>**

# **TABLE OF CONTENTS**

I.    BACKGROUND ...........................................................................................................1

    A.  Plaintiffs' prior identical lawsuits against other individuals...........................................1

    B.  The Complaint alleges only lawful conduct by the Haynes Defendants ......................3

II.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE HAYNES
      DEFENDANTS ...........................................................................................................4

    A.  The Complaint must be dismissed for lack of personal jurisdiction...........................4

    B.  RICO's nationwide service of process provision does not provide the
        Court with personal jurisdiction over Haynes ...........................................................8

        1.  The Court should apply the well-reasoned interpretations of Section
           1965 used by Other Circuits and Decline to Apply the Fourth Circuit's
           Decision in ESAB. ...........................................................................................8

        2.  The "Ends of Justice" do not require that the Court exercise personal
           jurisdiction over Haynes ...............................................................................11

        3.  Plaintiffs do not have a colorable RICO claim. ............................................12

III.  PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM AS TO THE
      HAYNES DEFENDANTS AND MUST BE DISMISSED ...........................................12

    A.  The Supreme Court of Virginia's decision in *Settlement Funding* requires
       dismissal of Plaintiffs' Claims in their entirety. ..........................................................13

    B.  Plaintiffs' RICO claims are deficient as to the Haynes Defendants ...........................17

        1.  Plaintiffs lack standing under RICO to pursue claims against the
           Haynes Defendants. ......................................................................................18

        2.  The Haynes Defendants are not alleged to have engaged in activity
           prohibited by RICO........................................................................................20

        3.  Plaintiffs fail to allege a violation of Sections 1962(a) & (b)..........................22

        4.  Lending money to an enterprise cannot support liability under Section
           1962(c). ........................................................................................................23

         5.  The Complaint fails to establish that the Haynes Defendants were part
           of a RICO conspiracy......................................................................................26

    C.  Plaintiffs' claims under the Virginia usury statute must fail. .......................................27

    D.  The Haynes Defendants have not been unjustly enriched. ..........................................28

IV.   CONCLUSION...........................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*800537 Ontario Inc. v. Auto Enters., Inc.*,
  113 F. Supp. 2d 1116 (E.D. Mich. 2000) .................................................................9

*Anderson v. HSBC Bank Nev., N.A.*,
  2012 U.S. Dist. LEXIS 146814 (C.D. Cal. Oct. 11, 2012) ....................................29

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................13

*Beck v. Prupis*,
  529 U.S. 494 (2000) ...............................................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................................13

*Busby v. Crown Supply, Inc.*,
  896 F.2d 833 (4th Cir. 1990) .................................................................................18

*Estate of Carvel ex rel. Carvel v. Ross*,
  566 F. Supp. 2d 342 (D. Del. 2008) ......................................................................12

*Chi v. MasterCard Int'l, Inc.*,
  No. 1:14-CV-614-TWT, 2014 WL 5019917 (N.D. Ga. Oct. 7, 2014) ...................25

*Chisolm v. TransSouth Fin. Corp.*,
  95 F.3d 331 (4th Cir. 1996) ..............................................................................18, 19

*Colt Defense, LLC v. Heckler & Koch Defense, Inc.*,
  No. 2:04-cv-258, 2004 U.S. Dist. LEXIS 28690 (E.D. Va. Oct. 22, 2004)..............4

*Cory v. Aztec Steel Bldg., Inc.*,
  468 F.3d 1226 (10th Cir. 2006) .........................................................................9, 10

*D'Addario v. Geller*,
  264 F. Supp. 2d 367 (E.D. Va. 2003) ...............................................................11, 12

*Daimler AG v. Bauman*,
  571 U.S. ----, 134 S. Ct. 746 (2014) .......................................................................7

*Dongelewicz v. PNC Bank Nat'l Ass'n*,
  104 F. App'x 811 (3d Cir. 2004) ......................................................................25, 26

*ePlus Technology, Inc. v. Aboud*,
   313 F.3d 166 (4th Cir. 2002) ............................................................5

*ESAB Grp., Inc. v. Centricut, Inc.*,
   126 F.3d 617 (4th Cir. 1997) ................................................. *passim*

*FC Inv. Grp. LC v. IFX Markets, Ltd.*,
   529 F.3d 1087 (D.C. Cir. 2008) .........................................................9

*Foster v. Wintergreen Real Estate Co.*,
   363 F. App'x 269 (4th Cir. 2010) ....................................................27

*United States ex rel. Garzione v. PAE Gov't Servs., Inc.*,
   164 F. Supp. 3d 806, 811 (E.D. Va. 2016) .......................................13

*GE Inv. Private Placement Partners II v. Parker*,
   247 F.3d 543 (4th Cir. 2001) ...........................................................27

*Giarratano v. Johnson*,
   521 F.3d 298 (4th Cir. 2008) ...........................................................13

*Gibbs et al. v. Rees et al.*,
   No. 3:17-cv-386, ECF No. 1 (E.D. Va. May 19, 2017)....................2, 3

*Gillison v. Lead Express, Inc.*,
   No 3:16-cv-41, 2017 WL 1197821 (E.D. Va. Mar. 30, 2017)............4, 6

*Goodrow v. Friedman & MacFadyen, P.A.*,
   No. 3:11CV20, 2012 WL 6725617 (E.D. Va. Dec. 27, 2012)......2, 17, 18

*Greenberg v. Com. ex rel. Atty. Gen. of Virginia*,
   255 Va. 594 (1998) ......................................................................27, 28

*Heubusch and Reynolds v. Boone*,
   213 Va. 414, 192 S.E.2d 783 (1972)................................................14

*Holmes v. Sec. Investor Prot. Corp.*,
   503 U.S. 258 (1992)...........................................................................18

*Indus. Bank of Latvia v. Baltic Fin. Corp.*, No. 93 Civ. 9032(LLS),
   1994 WL 286162 (S.D.N.Y. Jun. 27, 1994) .....................................25

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010).........................................................24, 26

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984)............................................................................7

*KMLLC Media, LLC v. Telemetry, Inc.*,
  No. 1:15-cv-432, 2015 WL 6506308 (E.D. Va. Oct. 27, 2015) ............................................5, 6

*M.B. by & through Brown v. McGee*,
  No. 3:16CV334, 2017 WL 1364214 (E.D. Va. Mar. 24, 2017) ........................................13, 26

*Moss v. BMO Harris Bank, N.A.*,
  258 F. Supp. 3d 289, 306 (E.D.N.Y. 2017) .................................................................................24

*New Mexico v. Mescalero Apache Tribe*,
  462 U.S. 324 (1983)......................................................................................................................17

*Nutrimost, LLC v. Werfel*,
  No. 2:15-cv-531, 2016 WL 5107730 (W.D. Pa. Mar. 2, 2016) ....................................................9

*Palmetto State Med. Ctr., Inc. v. Operation Lifeline*,
  117 F.3d 142 (4th Cir. 1997) ..............................................................................................19, 21

*People Exp. Airlines, Inc. v. 200 Kelsey Assocs., LLC*,
  922 F. Supp. 2d 536 (E.D. Va. 2013) ...........................................................................................5

*Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*,
  262 F.3d 260 (4th Cir. 2001) ......................................................................................................18

*PT United Can Co. Ltd. v. Crown & Cork Seal Co., Inc.*,
  138 F.3d 65 (2d Cir. 1998)..........................................................................................9, 11, 12

*Radford v. Community Mortgage and Investment Corporation*,
  226 Va. 596, 312 S.E.2d 282 (1984)............................................................................................14

*Renaissance Ctr. Venture v. Lozovoj*,
  884 F. Supp. 1132 (E.D. Mich. 1995)..........................................................................................25

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993)......................................................................................................................24

*Rolls-Royce Corp. v. Heros, Inc.*,
  576 F. Supp. 2d 765 (N.D. Tex. 2008) ..........................................................................................9

*Rosner v. Bank of China*,
  528 F. Supp. 2d 419 (S.D.N.Y. 2007)..........................................................................................25

*Sadighi v. Daghighfekr*,
  36 F. Supp. 2d 267 (D.S.C. 1999)......................................................................11, 12, 22, 23

*Schmidt v. Household Fin. Corp., II*,
  276 Va. 108, 661 S.E.2d 834 (2008)......................................................................................29, 30

*Settlement Funding, LLC v. Von Neumann-Lillie*,
    274 Va. 76, 645 S.E.2d 436 (2007)..................................................................... *passim*

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
    226 F. Supp. 3d 589, 561 (E.D. Va. 2017) ......................................................19, 20

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
    884 F.3d 489 (4th Cir. 2018) ............................................................................19

*Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co.*,
    534 F. Supp. 2d 1326 (S.D. Fla. 2008) .............................................................25

*Swarey v. Desert Capital REIT, Inc.*,
    No. DKC 11-3615, 2012 WL 4208057 (D. Md. Sept. 20, 2012) ...........................12

*U.S. v. Mouzone*,
    687 F.3d 207 (4th Cir. 2012) ............................................................................27

*United States v. Bergrin*,
    650 F.3d 257 (3d Cir. 2011)..............................................................................21

*United States v. Pepe*,
    747 F.2d 632 (11th Cir. 1984) ..........................................................................26

*United States v. Pinson*,
    860 F.3d 152 (4th Cir. 2017) ............................................................................27

*In re XE Servs. Alien Tort Litig.*,
    665 F. Supp. 2d 569 (E.D. Va. 2009) ..................................................21, 23, 24

**Statutes**

10-1-201, Title 10 Chippewa Cree Tribal Code ........................................................17

18 U.S.C. § 1961(1) ..............................................................................................21

18 U.S.C. § 1961(6) ..........................................................................................17, 21

18 U.S.C. § 1962 .......................................................................................... *passim*

18 U.S.C. § 1965........................................................................................... *passim*

28 U.S.C. § 1412 .....................................................................................................1

Va. Code § 6.2-100 ...............................................................................................28

Va. Code § 6.2-305(A)......................................................................................27, 28

Va. Code § 6.2-1540 .............................................................................................28

Va. Code § 6.2-1541 ...............................................................................................27, 28

Va. Code § 6.1-330.55 ................................................................................................14

**Other Authorities**

U.S. Dept. of Justice, *Civil RICO: A Manual for Federal Attorneys* (Oct. 2007) ........................10

U.S. CONST. AMEND. XIV ...........................................................................................5

FED. R. CIV. P. 8(a)(2) ................................................................................................13

FED. R. CIV. P. 12(b)(2) ..............................................................................................4

FED. R. CIV. P. 12(b)(6) ...........................................................................................2, 13

Defendants Haynes Investments, LLC, L. Steven Haynes, and Sovereign Business Solutions, LLC (collectively the "Haynes Defendants"), by counsel, file this memorandum of law in support of their motion to dismiss, and state as follows:

This lawsuit is the latest attempt by five plaintiffs to seek recovery from a great number of distinct defendants, all of whom are alleged to have operated or managed the same enterprise alleged to have made loans to Plaintiffs, which loans were lawful under the laws of two sovereign Native American tribes. Plaintiffs' claims have always been factually and legally deficient. But in seeking recovery from the Haynes Defendants, two companies and their executive, who are alleged to have done nothing more than lend to a sovereign Native American lender and identify potential service providers to that lender, Plaintiffs stretch both state and federal law well beyond its breaking point. Many other courts have found similar claims to be deficient as a matter of law. Perhaps most troubling is that Plaintiffs continue to file new complaints, here against the Haynes Defendants, without mention of mandatory authority from the Supreme Court of Virginia, which directly addressed *and rejected* identical policy arguments argued by Plaintiffs in this case. Plaintiffs' claims here are governed by that authority, and must be dismissed with prejudice.

## I.    BACKGROUND

### A.    Plaintiffs' prior identical lawsuits against other individuals

As stated above, Plaintiffs are no strangers to the Court. Rather, they have previously initiated two actions against other parties seeking to remedy identical harms.[1] In the first lawsuit, Plaintiffs alleged that Think Finance, Inc. ("Think Finance"), several wholly owned subsidiaries of Think Finance, a former executive of Think Finance, Kenneth Rees, and a third party, GPL

---

[1]    By order of this Court dated April 19, 2018 (ECF No. 26), claims against all defendants other than the Haynes Defendants were transferred to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1412, for referral to the Bankruptcy Court.

Servicing, Ltd., controlled and operated a nationwide lending scheme that made use of two sovereign Native American tribes' lending entities—Great Plains Lending, LLC and Plain Green, LLC—as nothing more than passive puppets in a sham relationship. Compl., *Gibbs et al. v. Rees et al.*, No. 3:17-cv-386, ECF No. 1 (E.D. Va. May 19, 2017) (the "TF Complaint").[2] The TF Complaint alleges that Rees and the companies—not the Haynes Defendants and not the sovereign Native American lenders—violated the Racketeer Influenced Corrupt Organizations Act ("RICO") by collecting and conspiring to collect unlawful debts from Virginia residents, and violated Virginia's usury laws by directly receiving payments from Virginia residents. As part of their lawsuit against Rees and Think Finance, Plaintiffs received *hundreds of thousands* of pages of documents in discovery, an exceedingly small selection of which are attached as exhibits to Plaintiffs' Complaint in this matter.

In their second lawsuit, Plaintiffs alleged that their actual lenders—Great Plains Lending and Plain Green—made illegal loans to, and collected illegal debts from, Virginia citizens. *See* Compl., *Gibbs et al. v. Plain Green, LLC et al.*, No. 3:17-cv-495, ECF No. 1 (E.D. Va. July 11, 2017) (the "Sovereign Complaint"). The Sovereign Complaint further alleges that Great Plains Lending and Plain Green—not Haynes and not Rees or Think Finance—made and collected usurious loans to the Plaintiffs. (Sovereign Complaint at ¶¶ 5, 58, 60, 63, 65-70, 72-74, 96, 98, 112, 116-117, 133, 137-138.) The Sovereign Complaint also alleges that Great Plains Lending and Plain Green—not Rees and the other companies—violated RICO by collecting unlawful debts from Virginia residents, conspiring to collect unlawful debts from Virginia residents, violated

---

[2]        This Court is permitted to consider Plaintiffs' inconsistent pleadings. As this Court has noted, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Goodrow v. Friedman & MacFadyen, P.A.*, No. 3:11CV20, 2012 WL 6725617, at *2 (E.D. Va. Dec. 27, 2012) (Lauck, M.J.) (citing *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir.2006)).

Virginia's usury laws by directly receiving payments from Virginia residents, and have been unjustly enriched by Virginia residents.

## B.    The Complaint alleges only lawful conduct by the Haynes Defendants

Faced with numerous motions to dismiss both the TF Complaint and the Sovereign Complaint pointing to abundant mandatory legal authority that acted as a complete liability in those cases, Plaintiffs ignored that authority and filed the instant Complaint against the Haynes Defendants. The instant Complaint alleges identical harms and practically identical theories of liability as those in the TF Complaint and Sovereign Complaint, including as to the Haynes Defendants. Yet despite the benefit of having received hundreds of thousands of pages of documents from the defendants in the other cases, Plaintiffs' Complaint can only muster three basic allegations regarding the Haynes Defendants. First, that Haynes Investments, LLC and Sovereign Business Solutions, LLC were previously a lender to Plain Green, LLC, receiving interest on funds lent to Plain Green through a line of credit. Compl. ¶¶ 13, 15, 35-36, 38, 49-52; 54-60. Second, that Mr. Haynes identified potential ACH providers for use by Think Finance and/or the sovereign Native American lenders. Compl. ¶¶ 73-79. Third, that Haynes Investments, LLC received a finder's fee *from Think Finance* equal to 1% of revenue collected from Plain Green, LLC.[3] Compl. ¶ 38. Beyond these three limited allegations, there is nothing more concerning the Haynes Defendants.

Further, Plaintiffs admit, as they must, that the Haynes Defendants provided **no** funding to Great Plains Lending, LLC and was not involved in any interactions with that entity. Compl. at ¶

---

[3]      Paragraph 38 of the Complaint references the referral fee paid to Haynes but fails to attach the actual referral agreement that provides the terms under which Haynes was paid the referral fee. Plaintiffs, however, have possessed the referral agreement for months through document productions in the Think Finance case. That agreement confirms, contrary to the insinuations within the Complaint, that Haynes received his referral fee *directly* from Think Finance, not from the Sovereign Lenders.

41. And, the documents attached to the Complaint demonstrate real and ongoing control of the Sovereign Lenders by the Native American Tribes that formed and own those entities. For example, paragraph 58 of the Complaint admits that the Chippewa Cree Tribe—not Think Finance—requested certain changes to the relationship with the Haynes Defendants. The e-mail supporting this allegation—attached to the Complaint as Exhibit 3—demonstrates that there were real negotiations between Think, Haynes, and Plain Green's counsel. There are thousands more similar documents demonstrating true and complete control of the sovereign Native American lenders by the tribes within Plaintiffs' possession. And, of course, none of the documents demonstrate that the Haynes Defendants have done anything other than serve as a source of credit selected by Plain Green, LLC.

## II.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE HAYNES DEFENDANTS

### A.   The Complaint must be dismissed for lack of personal jurisdiction.

None of the Haynes Defendants are subject to the personal jurisdiction of this Court. In short, neither Mr. Haynes nor the Haynes entities have contacts with the Commonwealth of Virginia sufficient to subject them to suit here consistent with the requirements of Due Process. Accordingly, the Complaint must be dismissed.

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Gillison v. Lead Express, Inc.*, No 3:16-cv-41, 2017 WL 1197821, at *9 (E.D. Va. Mar. 30, 2017) (Lauck, J.) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003)). The jurisdictional facts alleged by the plaintiff "must not be vague or conclusory, nor may the plaintiff merely extract the language from the Virginia long-arm statute and apply it to the defendant[s]." *Colt Defense, LLC*

*v. Heckler & Koch Defense, Inc.*, No. 2:04-cv-258, 2004 U.S. Dist. LEXIS 28690, at *29 (E.D. Va. Oct. 22, 2004 (citation omitted)).

The determination of whether the Court can assert personal jurisdiction over a nonresident defendant involves two steps:  (1) whether the state's long arm statute authorizes the exercise of jurisdiction; and (2) if so, whether the exercise of jurisdiction comports with due process requirements under the Fourteenth Amendment.  *People Exp. Airlines, Inc. v. 200 Kelsey Assocs., LLC*, 922 F. Supp. 2d 536, 542 (E.D. Va. 2013) (quoting *Carefirst*, 334 F.3d at 397).

"Like most other states, Virginia has a long arm statute that extends the jurisdiction of its courts as far as federal due process permits."  *ePlus Technology, Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002) (citing Va. Code Ann. § 8.01-328.1(A)).  Therefore, "the statutory inquiry necessarily merges with the constitutional inquiry," and the Court need only assess whether subjecting the defendant to jurisdiction in Virginia is consistent with due process.  *Id*. (quoting *ALS Scan, Inc*., 293 F.3d 132, 135-36 (4th Cir. 1996)).

There are two forms of personal jurisdiction that meet the requirements of due process:  specific and general.  *KMLLC Media, LLC v. Telemtery, Inc*., No. 1:15-cv-432, 2015 WL 6506308, *3 (E.D. Va. Oct. 27, 2015) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985) *and CFA Inst. v. Inst. Of Chartered Fin. Analysts of India*, 551 F.3d 285, 291 n.15 (4th Cir. 2009)).  "In both instances, a nonresident defendant must have sufficient 'minimum contacts' with the forum state that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Here, Plaintiffs do not allege that the Haynes Defendants are subject to the "general jurisdiction" of the Court.[4]  Instead, Plaintiffs' Complaint seeks to subject the Haynes Defendants

---

[4]    The Plaintiffs could not argue that Haynes is subject to the general personal jurisdiction of this Court.  If the defendant's contacts with the State are not the basis for the suit, then jurisdiction over the defendant must arise from

to the "specific jurisdiction" of the Court.  To determine if specific jurisdiction can be found over a defendant, the Court must consider:  (1) the extent to which the defendant has purposefully availed himself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.  *Gillison*, 2017 WL 1197821, at \*10 (citing *ALS Scan*, 293 F.3d at 712).  Only if the purposeful availment prong of the specific jurisdiction test is satisfied does the Court need to consider the second and third prongs of the test.  *Gillison*, 2017 WL 1197821, at \*10 (citing *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).

While no clear formula exists for determining what constitutes purposeful availment, the Court may consider, among other things, whether the defendant:  maintains offices or agents in Virginia; owns property in Virginia; reached into Virginia to solicit or initiate business; deliberately engaged in significant or long-term business activities in Virginia; or is a party to a contract providing for the application of Virginia law.  *Gillison*, 2017 WL 1197821, at \*10.

Plaintiffs fail to make *any* factual allegations that the Haynes Defendants have any contacts with Virginia such that they can be found to have purposefully availed themselves of the privilege of conducting activities in Virginia, nor could they.  (See Affidavit of Steven Haynes, attached hereto as Exhibit "A").  Rather, the Complaint merely alleges that the Haynes Defendants entered into contracts with Plain Green and Think Finance.  Those allegations, however, do nothing to

---

the defendant's general and persistent, but unrelated, contacts with the State.  *ALS Scan*, 293 F.3d at 712).  "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose [or general] jurisdiction there." *KMLLC*, 2015 WL 6506308, at \*4 (quoting *Daimler AG v. Bauman*, 571 U.S. ----, 134 S. Ct. 746, 760 (2014)).  "Absent exceptional circumstances, the defendant is only subject to the general jurisdiction of the forum state if it is the defendant's domicile."  *Id.*  As the Complaint indicates, Haynes Investments, LLC, and Sovereign Business Solutions both have a "principal place of business in Dallas, Texas." Compl. ¶¶ 13, 15. And, Mr. Haynes is domiciled in Texas, not Virginia.  If this were not enough, the Complaint makes no other allegations of continuous or systematic contacts by Haynes with Virginia so as to potentially subject either entity or Mr. Haynes, individually, to the jurisdiction of this Court.

demonstrate *the Haynes Defendants'* contacts with the forum. As such, Plaintiffs have failed out of the gate to present any evidence of jurisdictional facts as to the Haynes Defendants. And, the Haynes Defendants cannot be subject to the Court's jurisdiction based upon contacts with non-parties Think Finance and Plain Green—at least where all such contact occurred outside of Virginia.

In determining personal jurisdiction, each defendant's contacts with the forum state must be assessed individually. *See Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 n.13 (1984). The focus must be on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. ----, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton*, 465 U.S. at 775). Due process is satisfied only where that relationship arises out of contacts that the "defendant himself creates with the forum State" without regard to the "unilateral activity of another party or a third person." *Id*. at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) *and Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 134 S. Ct. at 1123 (quoting *Burger King Corp*., 471 U.S. at 475).

Here, Plaintiffs' claims as to the Haynes Defendants pertain to those entities' status as a lender to Plain Green, LLC, and Mr. Haynes' work with Think Finance to identify potential ACH partners. None of the alleged contacts between the Haynes Defendants and Plain Green, LLC and Think Finance are alleged to have occurred in Virginia. In fact, the only allegations of the Complaint touching upon Virginia are the acts of the third-party sovereign Native American Lenders, distinct entities who are defendants in a separate lawsuit brought by Plaintiffs.

As Plaintiffs have failed to allege any facts demonstrating the Haynes Defendants direct contacts with this forum, the Haynes Defendants cannot be subject to the Court's jurisdiction and the Complaint should be dismissed for lack of personal jurisdiction.

**B.**    **RICO's nationwide service of process provision does not provide the Court with personal jurisdiction over Haynes**

In addition to the typical personal jurisdiction analysis, RICO's venue provisions permit a court to exercise personal jurisdiction over a defendant in certain limited circumstances. *See* 18 U.S.C. § 1965. This Court should consider its ability to exercise personal jurisdiction over the Haynes Defendants pursuant to 18 U.S.C. § 1965(b),[5] which permits nationwide jurisdiction only when the "ends of justice require."

**1.**    ***The Court should apply the well-reasoned interpretations of Section 1965 used by Other Circuits and Decline to Apply the Fourth Circuit's Decision in ESAB.***

The Haynes Defendants recognize that the Fourth Circuit, in *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997), has analyzed personal jurisdiction under Section 1965(d), finding nationwide jurisdiction to be proper whenever a defendant is validly served anywhere in the country. But the Court should not apply Section 1965(d) here as a basis for exercising jurisdiction over the Haynes Defendants. Instead, the Court should adopt the reasoning of every other circuit court—as well as the United States Department of Justice—to consider the issue anew and analyze personal jurisdiction according to the "ends of justice" test as described below.

In *ESAB*, the Fourth Circuit determined that a plaintiff may establish personal jurisdiction over a defendant pursuant to 18 U.S.C. § 1965(d) by effectuating service over the defendant in any

---

[5]    18 U.S.C. § 1965(a) also provides for personal jurisdiction over a defendant, but only for the court in which the defendant resides, has an agent, or transacts his or her business. As explained above, Haynes is not alleged to, and does not, reside in or transact business in Virginia. Accordingly, Section 1965(a) cannot provide a basis for the exercise of personal jurisdiction over the Haynes Defendants in this case.

district where he resides, as long as it comports with due process.  126 F.3d at 627.  The *ESAB* ruling is confusing as Section 1965(d) does not deal with personal jurisdiction, but instead addresses service of "other process."  Even the plain language of *ESAB* itself casts doubt on its validity.  Specifically, *ESAB* explicitly sought to address the "alternative basis for personal jurisdiction based on 18 U.S.C. § 1965(b)," but then concluded the statute's nationwide service provision is found under Section 1965(d) which pertains to service of "other process," and never mentioned Section 1965(b) again.  *Id.* at 626-27.  At best, *ESAB* appears to be an incomplete analysis of RICO's jurisdiction provision.

Conversely, the next year, the Second Circuit conducted a thorough analysis of Section 1965 and determined that nationwide jurisdiction stems from Section 1965(b).  *PT United Can Co. Ltd. v. Crown & Cork Seal Co., Inc.*, 138 F.3d 65, 70-72 (2d Cir. 1998).  The Second Circuit reasoned that Section 1965(b) must be used to establish personal jurisdiction over a RICO defendant in "far flung fora" as Congress expected suits to be brought where "normally expected" pursuant to Section 1965(a).  *Id.* at 71.  Instead, because Section 1965(d) refers to "all *other* process," the section necessarily does not refer to sections (a)-(c).  *Id.* at 72.

Every circuit court that has considered the issue since *PT United* has adopted the Second Circuit's reasoning.  *See FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226 (10th Cir. 2006); *see also Nutrimost, LLC v. Werfel*, No. 2:15-cv-531, 2016 WL 5107730, at *6 (W.D. Pa. Mar. 2, 2016) (anticipating Third Circuit would apply Second Circuit analysis); *800537 Ontario Inc. v. Auto Enters., Inc.,* 113 F. Supp. 2d 1116, 1127 (E.D. Mich. 2000) (applying Second Circuit analysis); *Rolls-Royce Corp. v. Heros, Inc.,* 576 F. Supp. 2d 765, 779 (N.D. Tex. 2008) (adopting Second Circuit analysis).  In electing to follow the Second, Seventh, and Ninth Circuits, the Tenth Circuit remarked that *ESAB* utterly

failed to "observe the contrary position of the Seventh and Ninth Circuits, and it only mentioned subsection (b) in passing, characterizing it as a venue provision." *Cory*, 468 F.3d at 1230.

Significantly, the United States Department of Justice, the federal governmental agency responsible for the criminal enforcement of organized crime and racketeering under RICO, agrees with the Second, Seventh, Ninth, Tenth, and District of Columbia Circuits' position, stating in a public manual for federal attorneys:

> Some courts have indicated that 18 U.S.C. § 1965(d) provides for nationwide service of a summons against defendants." *Id.* (citing *ESAB* and other cases). *However, that position arguably cannot be reconciled with the text of Section 1965 or its legislative history.* As the Second Circuit stated in *PT United Can Co. Ltd.*, 138 F.3d at 71-72, because Section 1965(b) refers to the service of a summons and Section 1965(c) refers to the service of a subpoena, Section 1965(d)'s reference to the service of "[a]ll other process," "means process other than a summons of a defendant or subpoena of a witness." Moreover, as noted above, the Senate Report regarding Section 1965 states that "[s]ubsection (b) [of 1965] provides nationwide service of process on parties," and not subsection (d). *Accord Cory* [*v. Aztec Steel Bldg., Inc.*], 468 F. 3d [1226,] 1230-31 [10th Cir. 2006].

U.S. Dept. of Justice, *Civil RICO: A Manual for Federal Attorneys*, at 94-5, n.81 (Oct. 2007) (available at https://www.justice.gov/sites/default/files/usam/legacy/2014/10/17/civrico.pdf) (emphasis added) (last visited Jul. 17, 2018).

Moreover, nationwide jurisdiction under section 1965(b) is "consistent with congressional intent," which dictates that "the ends of justice require that they be brought before the court." *Cory*, 468 F.3d at 1231. This is wholly inconsistent with *ESAB*'s holding, which requires no analysis of a defendant's contacts with the forum and permits "personal jurisdiction [to] be asserted over a defendant anywhere in the country." *ESAB*, 126 F.3d at 628.

Even courts in the Fourth Circuit have recognized that *ESAB* failed to perform a complete analysis of Section 1965. The District of South Carolina recognized that the Second, Seventh, and Ninth Circuits interpreted RICO's personal jurisdiction provisions to exist under Section 1965(b),

where "nationwide service of process is not automatic; instead, a plaintiff has to demonstrate that the ends of justice require the assertion of such process." *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 267, 273 (D.S.C. 1999). It recognized the discrepancy between that "well-reasoned" interpretation guided by a "sequential analysis of section 1965" and the Fourth Circuit's ruling in *ESAB*, which interpreted the personal jurisdiction issue under Section 1965(d) "without explanation." *Id.* at 274; *see also D'Addario v. Geller*, 264 F. Supp. 2d 367, n.22 (E.D. Va. 2003) ("[T]he Fourth Circuit seems to have eradicated the 'ends of justice' inquiry by using section 196[5](d) to acquire personal jurisdiction.").

"Section 1965 makes sense only if all of its subsections are read together." *PT United*, 138 F.3d at 71. The Fourth Circuit's holding in *ESAB* renders the text of Section 1965(b) surplusage, and should be treated as an incomplete analysis of that Section. As a result, this Court should undertake a full and proper reading of Section 1965 and apply RICO's jurisdictional provisions as Congress intended – just as the Second, Seventh, Ninth, Tenth, and District of Columbia Circuits, along with countless district courts, have done. This Court should determine personal jurisdiction pursuant to Section 1965(b) and, ultimately, determine that the ends of justice do not permit this case to proceed in this district.

> **2.**   ***The "Ends of Justice" do not require that the Court exercise personal jurisdiction over Haynes***

Section 1965(b) "provides for nationwide service and jurisdiction over 'other parties' not residing in the district, who may be additional defendants of any kind, including co-defendants, third party defendants, or additional counter-claim defendants." *PT United Can Co.*, 138 F.3d at 71. But jurisdiction over other defendants not subject to jurisdiction in the forum under a more traditional due process analysis is not triggered automatically. Rather, Section 1965(b) "requires a showing that the 'ends of justice' so require" the assertion of the nationwide jurisdictional reach

of the RICO statute.  *Id.*  Although the "ends of justice" is not defined under the statute, courts have interpreted this to require a showing that "there is no [other] district with personal jurisdiction over all defendants."  *Id.* at 71 n.5; *see also Estate of Carvel ex rel. Carvel v. Ross*, 566 F. Supp. 2d 342, 351 (D. Del. 2008) (noting same).  In this case, the United States District Court for the Northern District of Texas – where Plaintiffs allege the Haynes Defendants are located, along with countless other witnesses and documents, as well as the Think Bankruptcy Proceedings to which this Court has transferred numerous other entities – is a suitable district where the defendants are amenable to suit based upon the allegations of the Complaint.  As jurisdiction properly exists elsewhere, the 'ends of justice' test does not permit Plaintiffs to maintain the present suit in this Court.  As a result, Plaintiffs cannot utilize 1965(b) to obtain personal jurisdiction over the Haynes Defendants.

### 3.    *Plaintiffs do not have a colorable RICO claim.*

Exercising jurisdiction pursuant to RICO is inappropriate where the RICO claim is not colorable.  *See Sadighi v. Daghighfekr*, 36 F. Supp. 2d 267, 271 (D.S.C. 1999); *Swarey v. Desert Capital REIT, Inc.*, No. DKC 11-3615, 2012 WL 4208057, at *8 (D. Md. Sept. 20, 2012); *D'Addario*, 265 F. Supp. 2d at 388-89.  As is set forth in detail in Section III.B below, Plaintiffs' RICO claim is "so insubstantial, implausible . . . [and] otherwise devoid of merit" as to the Haynes Defendants such that their claim is not colorable.  Plaintiffs may not use RICO to assert back door personal jurisdiction over Haynes which does not otherwise exist.  *Sadighi*, 36 F. Supp. 2d at 271.

## III.    PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM AS TO THE HAYNES DEFENDANTS AND MUST BE DISMISSED

Under the Federal Rules of Civil Procedure, a plaintiff's complaint is required to set forth

"a short and plain statement showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).
To survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), a plaintiff's complaint must provide
more than "a formulaic recitation of the elements of a cause of action" and the "[f]actual allegations
must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007). This is because the Federal Rules "do [ ] not unlock the doors of
discovery for a plaintiff armed with nothing more than conclusions…." *Ashcroft v. Iqbal*, 556
U.S. 662, 678-79 (2009).

      Courts must grant a Motion under FED. R. CIV. P. 12(b)(6) where a plaintiff's complaint
lacks well-supported factual allegations that permit the court to "draw the reasonable inference
that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *United States ex
rel. Garzione v. PAE Gov't Servs., Inc.*, 164 F. Supp. 3d 806, 811 (E.D. Va. 2016), *aff'd*, 670 F.
App'x 126 (4th Cir. 2016). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]'
devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550
U.S. at 557). The factual allegations of a complaint cannot contradict the plain text of an exhibit,
because "in the event of a conflict between the bare allegations of the complaint and any attached
exhibit..., the exhibit prevails." *M.B. by & through Brown v. McGee*, No. 3:16CV334, 2017 WL
1364214, at *2 (E.D. Va. Mar. 24, 2017) (Lauck, J.) (quoting *Fayetteville Inv'rs v. Commercial
Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). Courts are not required to accept as true
"unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson,* 521
F.3d 298, 302 (4th Cir. 2008) (quotation omitted).

      **A.**      **The Supreme Court of Virginia's decision in *Settlement Funding* requires
dismissal of Plaintiffs' Claims in their entirety.**

The Supreme Court of Virginia's holding in *Settlement Funding, LLC v. Von Neumann-*

*Lillie*, is the most recent and most compelling case analogous to the facts at hand, and requires a finding that Plaintiffs' claims, *in their entirety*, are without merit and must be dismissed. *Settlement Funding, LLC v. Von Neumann-Lillie*, 274 Va. 76, 645 S.E.2d 436 (2007). The core holding in *Settlement Funding*, requiring application of a choice-of-law provision in a consumer contract permitting interest at rates far in excess of Virginia's usury limits, is fatal to Plaintiffs' theory of this case. The holding there applies with equal force here and compels a finding that the loan agreements between Plaintiffs and the sovereign Native American lenders were lawful.

The facts in *Settlement Funding* are on all fours. There, a Virginia consumer entered into a loan agreement calling for interest to be paid in excess of Virginia's 12% usury limit. *Id.*, 247 Va. at 78, 80, 645 S.E.2d at 437-38. After the consumer defaulted on her loan, the company to which the loan had been assigned sought judgment from the consumer for the principal, interest, and penalties. *Id.*, 247 Va. at 78-79, 645 S.E.2d at 437-38. The consumer specifically asserted that her loan agreement was void as a result of Virginia's usury statute and public policy. *Id.*, 247 Va. at 79-80, 645 S.E.2d at 438.[6] The Circuit Court refused to apply the Utah law called for in the

---

[6]    Indeed, the consumer in *Settlement Funding* expressly presented arguments regarding Virginia's public policy against usurious loans in the context of an out-of-state lender, arguing in her brief:

> [T]he specific contract provision in question - the interest rate provision - is also against Virginia public policy. Virginia has established a public policy to protect its citizens from usurious and high rate loans. Virginia Code Section 6.1-330.55. Assuming for the sake of argument that Utah law does not have any cap on allowable interest rates, this would be against Virginia's expressed public policy. Allowing Appellant's choice of law provision to stand in the facts of this case would completely eliminate Virginia's usury protection for its citizens. All a money lender would need to do to avoid Virginia's usury laws would be 1) set up a front in Utah (even if that front was nothing more than a post office box), and 2) place in the loan agreement a Utah choice of law provision. Virginia's usury laws "represent a clarification of the public policy of the state that usury is not to be tolerated, and the court should therefore be chary of permitting this policy to be thwarted." *Heubusch and Reynolds v. Boone*, 213 Va. 414, 421, 192 S.E.2d 783, 789 (1972); *Radford v. Community Mortgage and Investment Corporation*, 226 Va. 596, 602, 312 S.E.2d 282, 285 (1984).

BRIEF FOR APPELLEE, *Settlement Funding v. Von Neumann-Lillie*, No. 061373, at *4-5 (Va. January 5, 2007) (available at 2006 WL 4701777). These policy arguments were considered and soundly rejected by the Virginia Supreme Court. The 2007 holding in *Settlement Funding* reflects the most recent pronouncement by Virginia's Supreme Court as to

parties' choice-of-law provision, and held the loan agreement was usurious under Virginia law. *Id.*, 247 Va. at 80, 645 S.E.2d at 438. On appeal, the Supreme Court was asked to "consider whether the circuit court erred in refusing to apply the law of the jurisdiction stipulated in the choice of law provision of a contract and its application of Virginia's usury law to the provisions of that contract." *Id.*, 247 Va. at 77, 645 S.E.2d at 437. Writing for the court, Justice Lacy unequivocally answered that question in the affirmative, stating, "the circuit court erred in refusing to apply Utah law in the construction of the loan agreement." *Id.*, 247 Va. at 81, 645 S.E.2d at 439.

The Supreme Court's analysis was unqualified, "[i]f a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied." *Id.*, 247 Va. at 80, 645 S.E.2d at 438 (citing *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 342, 397 S.E.2d 804, 807 (1990)). The only fact relevant to the court in its decision to apply Utah law was the plain text of the consumer loan agreement which provided that the loan was completed in Utah, the original lender was doing business in Utah, and the consumer agreement provided that disputes would be resolved "in accordance with the laws of the State of Utah." *Id.*, 247 Va. at 80-81, 645 S.E.2d at 438-39. Because, unlike Virginia, Utah had not established any maximum rates of interest in consumer loan agreements, the court reversed the circuit court's judgment in favor of the consumer "based on her claim of usury…." *Id.*, 247 Va. at 81, 645 S.E.2d at 439.

The holding of *Settlement Funding* conclusively demonstrates that Virginia consumers

---

the public policy of the Commonwealth regarding choice of law and usury in consumer contracts. Specifically, in light of the rejection of these arguments by consumers by the Virginia Supreme Court, the holding in *Settlement Funding* makes clear that Virginia public policy is not a basis to invalidate a loan agreement between a Virginia consumer and an out of state lender requiring repayment of interest at rates above Virginia's usury cap where there is a valid choice of law provision in the loan agreement.

may lawfully be charged interest rates exceeding those set by the Virginia usury statute – at least

where the consumer's loan agreement contains a choice-of-law provision.  Here, while Plaintiffs

have failed to attach their loan agreements to the Complaint, they did so in their Think Finance

Complaint.  In that case, the two loan agreements from the named Plaintiffs were attached as

Exhibits 3 and 4 to the Think Finance Complaint.  Those loan agreements contained choice-of-law

provisions which are remarkably similar to the provision in *Settlement Funding* requiring

application of Utah law.[7]  Plaintiffs' loan agreements require application of the laws of either

Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, Montana or the Otoe-Missouria

Tribe of Indians, Oklahoma – both of which, like Utah, do not have any maximum rate of

interest.[8]  And, the loan agreements contain an acknowledgement that each loan transaction was

---

[7]      For example, on the first page of the Plain Green consumer loan agreement entered into by Plaintiff Gibbs, under the heading "**IMPORTANT DISCLOSURE OF THE TERMS AND CONDITIONS OF THIS LOAN**," Plaintiff Gibbs was informed in bold and all-caps:

> **THE BORROWER EXPRESSLY CONSENTS AND AGREE THAT THIS LOAN IS MADE WITHIN THE TRIBE'S JURISDICTION AND GOVERNED BY TRIBAL LAW AND NOT THE LAW OF THE BORROWER'S RESIDENT STATE.  THE BORROWER IS STRONGLY CAUTIONED THAT IF THE BORROWER DOES NOT UNDERSTAND THIS CONSENT, OR DOES NOT WISH TO EXPRESSLY CONSENT TO TRIBAL JURISDICTION OR DOES NOT WISH TO HAVE THE LOAN GOVERNED BY LAWS OF THE TRIBE, THEN THE BORROWER SHOULD REFRAIN FROM ACCEPTING THIS LOAN OR RESCIND THE LOAN WITHIN THE TERMS OF THIS AGREEMENT.  ACCEPTING THE LOAN SHALL BE DEEMED EXPRESS CONSENT TO TRIBAL JURISDICTION AND EXPRESS CONSENT THAT THE LOAN SHALL BE GOVERNED BY THE LAWS OF THE TRIBE.  THE BORROWER'S RESIDENT STATE'S LAW MAY HAVE INTEREST RATE LIMITS AND OTHER CONSUMER PROTECTION PROVISIONS THAT ARE MORE FAVORABLE TO THE BORROWER.**

(Think Finance Compl., Ex. 3 at p. 1.)  Plaintiff Gibbs was also required to check a box acknowledging that, "By checking here and signing below, you [ . . . ] understand, acknowledge, and agree that this Loan is governed by the laws of the Chippewa Cree Tribe and is not subject to the provisions or protections of the laws of your home state or any other state."  (*Id.* at p. 8.)  Similar provisions are also present in the Great Plains Lending, LLC loan agreement entered into by Plaintiff Williams.  (Think Finance Compl., Ex. 4 at p. 1 ["**YOU AGREE THAT THIS LOAN IS MADE WITHIN THE TRIBE'S JURISDICTION AND IS SUBJECT TO AND GOVERNED BY TRIBAL LAW AND NOT THE LAW OF YOUR RESIDENT STATE.**"].)

[8]      *See, e.g.*, Section 10-1-201, Title 10 Chippewa Cree Tribal Code – Chippewa Cree Tribal Lending and Regulatory Code:

**Rate of Interest Set by Written Agreement — No Maximum or Usury Restriction; Fees**

completed "within the Tribe's jurisdiction and is subject to and governed by Tribal Law and not the law of the borrower's resident state." Indeed, the only real difference between the loan agreement in *Settlement Funding* and those attached to Plaintiffs' Complaint is the reference to the laws of sovereign Native American tribes rather than the laws of one of the fifty states. Yet the laws of a Native American sovereign are entitled to no less deference than the laws of the State of Utah or any other state. *Cf. New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 331-32 (1983) (discussing the historical context of tribal sovereignty and laws promulgated by the tribes). Thus, there is no distinction for purposes of the application of the law.

Accordingly, given the choice of law provisions Plaintiffs agreed to in their loan contracts, and acknowledging the holding in *Settlement Funding*, the interest rates charged to Plaintiffs were not usurious under the laws Plaintiffs agreed to in their loan agreement. As such, Plaintiffs' claims under the Virginia Usury Laws must be dismissed. And Plaintiffs' claims under 18 U.S.C. § 1962 must also fail because the interest charged to Plaintiffs was not "at least twice the enforceable rate" permitted under Virginia law. 18 U.S.C. 1961(6) (defining an "unlawful debt" under RICO). To hold otherwise, as the court in *Settlement Funding* correctly recognized, would be error.

## B. Plaintiffs' RICO claims are deficient as to the Haynes Defendants

Notwithstanding the conclusion that Plaintiffs' loans were entirely lawful under the holding of *Settlement Funding*, Plaintiffs' have both failed to allege the required RICO standing, as well

---

**and Charges as Agreed Upon by the Creditor and the Consumer.** Unless a maximum Interest rate or charge is specifically established elsewhere in this Title or the other laws of the Tribe, there is no maximum Interest rate or charge, or usury rate restriction between or among Persons if they establish the Interest rate or charge by written agreement. The Creditor and the Consumer can agree upon what fees and charges may be assessed as set forth in any written agreement between the Creditor and the Consumer.

The Chippewa Cree Tribal Lending and Regulatory Code is freely available online (https://www.plaingreenloans.com/css/title10.pdf) and has been produced as an exhibit in Federal Court. (Ex. A, Tribal Defendants' Reply in Further Support of Their Motion to Dismiss, D. Vt. No. 5:15-cv-101, ECF No. 92-1.) This Court can properly consider such documents. *See Goodrow*, No. 3:11CV20, 2012 WL 6725617, at *2.

as the elements of the various RICO claims against the Haynes Defendants.  Instead, all of Plaintiffs' RICO claims are improperly based upon alleged actions of the enterprise as a whole, as well as injuries caused by the actions of others, not the Haynes Defendants.  Plaintiffs' Sovereign Complaint against Plain Green and Great Plains confirms that those entities—not the Haynes Defendants—were the entities that actually took the actions that collected purportedly unlawful debts and that caused Plaintiffs' alleged harm.  On these facts, Plaintiffs lack standing under RICO to press their claims against the Haynes Defendants.  Further, given the dearth of facts alleged as to all of the Haynes Defendants—at least facts beyond their extension of credit to Plain Green— no RICO claim against the Haynes Defendants is possible.

      **1.**     *Plaintiffs lack standing under RICO to pursue claims against the Haynes Defendants.*

As an initial matter, Plaintiffs lack standing to pursue RICO claims against the Haynes Defendants because Plaintiffs have not been injured in their business or property by reason of any act or omission *by the Haynes Defendants*.  Private plaintiffs have standing to sue under RICO only when "injured in his business or property by reason of a violation of section 1962…."  18 U.S.C. § 1964(c); *see also Goodrow*, No. 3:11CV20, 2013 WL 3894842, at *20.  This standing requirement demands that a plaintiff demonstrate that a defendant's conduct is both the but-for and legal cause of a plaintiff's injury.  *Chisolm v. TransSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996); *see also Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268 (1992).[9]

---

[9]      The Haynes Defendants recognize that almost thirty years ago the Fourth Circuit rejected the notion that plaintiffs alleging harm under RICO Section 1962(a) need not demonstrate that their injury flows from the investment or use of racketeering income.  *Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990).  Like *ESAB*, that holding has been rejected by every other Circuit Court of Appeal, and questioned by other panels of the Fourth Circuit.  *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 264 (4th Cir. 2001).  Even the Supreme Court has questioned the soundness of this decision, stating, "[a]lthough we express no view on this issue, arguably a plaintiff suing for a violation of § 1962(d) based on an agreement to violate § 1962(a) is required to allege injury from the "use or invest[ment]" of illicit proceeds."  *Beck v. Prupis*, 529 U.S. 494, 506 n.9 (2000).  It is long time for this Court and the Fourth Circuit to join its fellow circuits in properly interpreting the injury requirement of Section 1964(c) in the context of an alleged violation of Section 1962(a).

A plaintiff must demonstrate that each defendant—not the enterprise as a whole—meets the proximate cause requirement.  "The pertinent inquiry in determining the existence of proximate, or legal cause, is whether the conduct has been so significant and important a cause that the defendant should be held responsible." *Chisolm,* 95 F.3d at 336.  Because recovery comes from a defendant and not the RICO enterprise, *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997), the RICO proximate cause element is necessary to "limit a person's responsibility for the consequences of that person's own act." *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 226 F. Supp. 3d 589, 561 (E.D. Va. 2017) (citing *Holmes*, 503 U.S. at 268).  In affirming the decision in *Slay's Restoration*, the Fourth Circuit recently confirmed that where a plaintiff's "claimed injury was not the *direct* result of the defendant's […] conduct, it was not *proximately* caused by that conduct, as required by § 1964(c)," and dismissal of the RICO claims is appropriate.  *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018) (emphasis in original).  In so holding, the Court of Appeals reaffirmed that the appropriate inquiry "turns on the *directness* of the resultant harm, not the *foreseeability* of that harm." *Id.* (emphasis in original) (citing *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010)).

Here, as in *Slay's Restoration*, Plaintiffs and the Haynes Defendants had no contact.  Their only connection is through a tenuous chain of events involving the independent actions of multiple third parties.  Plaintiffs' Complaint alleges only that "[i]f [the Haynes Defendants] did not invest and participate in the enterprise, Plaintiffs never would have received the illegal loans." Compl. ¶ 130.  But the extension of a line of credit to Plain Green did not cause Plaintiffs' alleged harms.  Rather, Plaintiffs' purported harm was caused only when Plaintiffs repaid their debt to Plain Green—an action which itself only occurred after Plaintiffs voluntarily entered into a loan agreement with Plain Green, and after other entities marketed those potential loans to Plaintiffs.

Stated differently, while Plaintiffs may be able to chain together a series of events without which they would not have repaid moneys to Plain Green, the mere extension of credit by the Haynes Defendants to Plain Green did not *directly* or *proximately* cause any harm.  The harm only occurred after Plaintiffs, their sovereign Native American lenders, and many others acted.  Accordingly, Plaintiffs have not established that their injuries were the direct result of the Haynes Defendants' actions, no proximate causation exists, and Plaintiffs therefore lack standing to sue the Haynes Defendants under 18 U.S.C. § 1964(c).  To hold otherwise would stretch RICO beyond the breaking point.  *Cf. Slay's Restoration*, 226 F. Supp. 3d at 595-96 (refusing to find RICO standing where a plaintiff had not sued the party with whom it had directly contracted and who was likely the party that had proximately harmed the plaintiff).

Finally, it is not even clear that Plaintiffs have suffered an injury to their business or property in the first place.  Indeed, Ms. Gibbs, readily admits that she received $1,200.00 from Plain Green while only repaying a total of $711.02[10] to Plain Green – an "injury" which has actually benefitted Ms. Gibbs' bottom line by almost $500.  Compl. ¶ 125; Think Finance Compl., Ex. 3.  This lack of concrete injury to business or property is, itself, an independent basis upon which to find Ms. Gibbs—together with any other Plaintiff who has collected more than she has paid out—has no standing to sue under 18 U.S.C. § 1964(c).

### 2.    *The Haynes Defendants are not alleged to have engaged in activity prohibited by RICO.*

Plaintiffs' Complaint fails to allege that the Haynes Defendants actually engaged in any acts prohibited under the statute.  The absence of such an allegation as to the Haynes Defendants

---

[10] Previously, Ms. Gibbs alleged that she repaid Plain Green only $566.82.  Think Finance Compl. at ¶ 76.  The Complaint does not explain this discrepancy.

requires dismissal of Plaintiffs RICO claims under Sections 1962(a), 1962(b), and 1962(c). It is black letter law that in order to face liability under RICO Sections 1962(a), 1962(b), or 1962(c), a proper defendant must be shown to have engaged in either a pattern of racketeering activity or the collection of an unlawful debt.  18 U.S.C. § 1962(a)-(c); *see also Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997) (noting that the plaintiff must prove that "each RICO defendant" engaged in a pattern of racketeering activity); *United States v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011) ("It is the 'person' charged with the racketeering offense—not the entire enterprise—who must engage in the 'pattern of racketeering activity.'" (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 244 (1989))).   The RICO statute has a defined and circumscribed list of actions which can serve as racketeering activity.  18 U.S.C. 1961(1). Similarly, the statute has a clear and unambiguous definition of what constitutes an unlawful debt. 18 U.S.C. § 1961(6).

Nowhere in the Complaint are the Haynes Defendants, *as opposed to the alleged enterprise as a whole*, alleged to have collected any debts from Plaintiffs or engaged in any of the statutorily defined acts of racketeering outlined in Section 1961(1) of the statute.   Instead, as discussed previously, the Haynes Defendants are only alleged to have extended credit to Plain Green and assisted Think Finance in identifying potential ACH providers.  But those actions do not constitute either racketeering activity under 18 U.S.C. § 1961(1) or the collection of an unlawful debt under 18 U.S.C. § 1961(6).  Without an allegation that the Haynes Defendants took an action prohibited by the statute, they cannot face liability under 18 U.S.C. § 1962(a)-(c).  *See In re XE Servs. Alien Tort Litig.*, 665 F. Supp. 2d 569, 598 (E.D. Va. 2009) (dismissing case against individual where plaintiffs' complaints alleged only that the enterprise, not the individual defendant, committed the underlying predicate acts).  Because the Haynes Defendants are not alleged to have engaged in

any acts of racketeering or collection of unlawful debts, they cannot face liability under RICO's substantive provisions, Sections 1962(a) through (c).

### 3.   *Plaintiffs fail to allege a violation of Sections 1962(a) & (b).*

Beyond the complete failure to allege that the Haynes Defendants engaged in prohibited predicate acts, Plaintiffs' complaint also fails to allege required elements of their claims under Sections 1962(a) and (b). In order to state a claim under Section 1962(a), Plaintiffs must allege facts demonstrating: (1) the Haynes Defendants (2) received income derived from (3) a pattern of racketeering activity or the collection of an unlawful debt (4) and then used or invested that racketeering income or its proceeds (5) in the acquisition of an interest in or the establishment or operation of (6) any enterprise (7) engaged in, or the activities of which affect, interstate or foreign commerce. 18 U.S.C. § 1962(a) "In short, section 1962(a) prohibits a person from receiving income from a pattern of racketeering activity [or the collection of an unlawful debt] and then using that income in the operation of an enterprise engaged in commerce. *Sadighi*, 36 F. Supp. 2d at 286 (citing *New Beckley Mining Corp. v. International Union, UMW of America,* 18 F.3d 1161, 1165 (4th Cir.1994)). But the Haynes Defendants are not alleged to have *used* or *invested* tainted funds in the operation the enterprise. Rather, the Haynes Defendants are alleged to have extended a line of credit to Plain Green, and Plain Green, and those entities then used the funds in the operation of the purported enterprise. And, if this were not enough, the source of funds used in the line of credit provided by the Haynes Defendants was not funded by income received from racketeering activity or the collection of an unlawful debt. These omissions are not mere technicalities—they are required elements of a claim under Section 1962(a), and their absence requires dismissal of Count One.

For a violation of Section 1962(b) plaintiffs must allege: "(i) that [Haynes] engaged in a pattern of racketeering activity [or the collection of an unlawful debt], (ii) that through this pattern,

he acquired an interest in, or control of, an enterprise (iii) that engaged in activities affecting interstate or foreign commerce, and (iv) that this acquisition of an interest or control caused property damage to the RICO plaintiffs." *In re XE Servs.*, 665 F. Supp. 2d at 596. "In short, § 1962(b) prohibits a person engaging in a pattern of racketeering for the purpose of acquiring or maintaining an interest in an enterprise." *Sadighi*, 36 F. Supp. 2d at 291. But the Haynes Defendants have never acquired or maintained an interest *in the defined enterprise*, nor have they done so through prohibited acts of racketeering or collection of unlawful debts. Rather, the Haynes Defendants are only alleged to have obtained an interest in a third party, GPLS. *See* Compl. Ex. 10.[11] In fact, the full e-mail chain of which Exhibit 10 is an excerpt, makes clear that in 2015 the Haynes Defendants were only contemplating making an equity investment into GPLS—a defendant in the Think Finance Complaint and alleged in the instant Complaint to be controlled by the Victory Park Defendants. But an investment by the Haynes Defendants into a fund allegedly controlled by others is not the conduct prohibited by Section 1962(b), particularly where that investment did cause any harm to Plaintiffs.

### 4. *Lending money to an enterprise cannot support liability under Section 1962(c).*

Plaintiffs' Complaint also fails to actually allege a substantive violation of RICO's conduct provision, Section 1962(c), by the Haynes Defendants. In order to plead a claim against the Haynes Defendants under Section 1962(c), Plaintiffs' Complaint must plausibly allege facts demonstrating: "(i) that [the Haynes Defendants] [are] associated with an enterprise (ii) that engages in or affects interstate or foreign commerce, (iii) that [the Haynes Defendants] conducted or participated in the conduct of the enterprise's affairs (iv) through a pattern of racketeering

---

[11]    Plaintiffs have obfuscated the full context of the potential investment by Haynes detailed in Exhibit 10, perhaps because the omitted portions confirm that Haynes was considering an investment into *GPLS*.

activity [or collection of an unlawful debt], (v) and that this pattern of racketeering activity [or collection of an unlawful debt] caused the property damage to the RICO plaintiffs."   *In re XE Servs.*, 665 F. Supp. 2d at 597.  The Complaint's failure to allege these key facts as to the Haynes Defendants requires dismissal of Plaintiffs' Section 1962(c) claims.

Initially, it is clear that there are no allegations that the Haynes Defendants operated or managed *the enterprise*.  The Supreme Court has repeatedly confirmed that "liability [under RICO] depends on showing that the defendant conducted or participated in the conduct of the *'enterprise's affairs,'* not just their *own* affairs." *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993) (emphasis in the original); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 371 (3d Cir. 2010) ("More precisely, one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself.") (internal quotation omitted).  As the Supreme Court confirmed, in order for a defendant to face liability he or she must play "*some* part in directing the enterprise's affairs…" *Reves*, 507 U.S. at 179 (emphasis in original).  Yet the Complaint makes no such allegation as to the Haynes Defendants.  Rather, the entire section of the Complaint dedicated to identifying facts demonstrating the Haynes Defendants' purported participation in the entity alleges only that "Haynes used his connections to *assist* the enterprise's efforts…" Compl. ¶ 64 (emphasis added).  But allegedly assisting an enterprise is not the same thing as directing the enterprise's affairs.  *See Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 306 (E.D.N.Y. 2017) (dismissing RICO claims against ACH providers because, in part, "a person may not be held liable merely for taking directions and performing tasks that are necessary and helpful to the enterprise, or for providing goods and services that ultimately benefit the enterprise.").

On this point, courts around the country have consistently recognized that "[r]egardless of how indispensable or essential such services may have been, rendering a professional service by

itself does not qualify as participation in a RICO enterprise." *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 431 (S.D.N.Y. 2007); *see also Chi v. MasterCard Int'l, Inc.*, No. 1:14-CV-614-TWT, 2014 WL 5019917, at *2 (N.D. Ga. Oct. 7, 2014) ("Simply providing financial services or processing credit card transactions is not enough to establish 'operation or management' of an enterprise."). This line of cases had been particularly well-developed in RICO cases filed against banking entities in connection with loans made to a purported RICO enterprise. *See Indus. Bank of Latvia v. Baltic Fin. Corp., No. 93 Civ. 9032(LLS)*, 1994 WL 286162, at *3 (S.D.N.Y. Jun. 27, 1994) (granting motion to dismiss RICO claim against bank because "provid[ing] banking services—even with knowledge of the fraud is not enough" to state a RICO claim); *see also Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co.*, 534 F. Supp. 2d 1326, 1338 (S.D. Fla. 2008) ("[b]ankers do not become racketeers by acting like bankers.") (quoting *Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank,* 934 F.2d 976, 981 (8th Cir.1991)); *Renaissance Ctr. Venture v. Lozovoj*, 884 F. Supp. 1132, 1146 (E.D. Mich. 1995) ("[P]assive financing arrangements are insufficient to give rise to [RICO] liability. Because defendants . . . did not manage or direct the enterprise, they may not be liable under RICO").

Most recently, this line of cases includes *Pennsylvania v. Think Finance*, where the Pennsylvania court dismissed **both** substantive and conspiracy-based state-RICO claims against a lender because "a defendant does not incur liability under the COA for merely funding an alleged unlawful enterprise." No. 14-CV-7139, 2018 WL 637656, at *9 (E.D. Pa. Jan. 31, 2018) (citing *Dongelewicz v. PNC Bank Nat'l Ass'n*, 104 F. App'x 811, 817-18 (3d Cir. 2004)). The Pennsylvania court's citation to the reasoning in *Dongelewicz* is particularly important. In that case, the Third Circuit emphasized that even where the terms of a loan agreement granted a lender certain approval rights for the underlying project, no RICO liability would exist, because to hold

otherwise "would wreak havoc on the lending industry, for any lender who reasonably wished to protect itself would be forced to run the risk of being sued for the unknown fraudulent acts of its borrowers." *Dongelewicz,* 104 Fed.Appx. at 817.

These cases are absolutely clear and counsel against permitting the RICO cause of action to continue against the Haynes Defendants. As those cases dictate, the Haynes Defendants' mere funding of Plain Green and/or the provision of consulting services to an alleged RICO enterprise is not enough to support liability.

Finally, "RICO does not criminalize engaging in a pattern of racketeering or collecting unlawful debt, but rather criminalizes participation in the affairs of an enterprise through those means." *United States v. Pepe*, 747 F.2d 632, 661 n.48 (11th Cir. 1984); *see also In re Ins. Brokerage*, 618 F.3d at 372 (holding that a defendant must conduct or participate in the enterprise's affairs "through—that is, by means of, by consequence of, by reason of, by the agency of, or by the instrumentality of—a pattern of racketeering activity."). As set forth above, the Haynes Defendants are not alleged to have engaged in any racketeering activity or collection of unlawful debts. As such, any participation in the affairs of the enterprise by the Haynes Defendants could not have been *through* such means, and therefore no violation of Section 1962(c) is possible.

### 5. *The Complaint fails to establish that the Haynes Defendants were part of a RICO conspiracy.*

Much like their claims under substantive RICO, Plaintiffs' claims against the Haynes Defendants under RICO's conspiracy provision must be dismissed. To establish a claim under Section 1962(d), a party must prove three elements: (1) the existence of a RICO enterprise affecting interstate commerce; (2) the participation of the conspirators in the affairs of the enterprise; and (3) an agreement among conspirators to further the criminal endeavor by committing two or more acts of racketeering activity or the collection of an unlawful debt. 18

U.S.C. § 1962(d); *see also U.S. v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012) (quoting *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 965 (7th Cir. 2000)).  Where, as here, a plaintiff has failed to state a claim under Section 1962(a), (b), or (c), "Plaintiffs' RICO conspiracy claim fails as well."  *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001); *see also Foster v. Wintergreen Real Estate Co.*, 363 F. App'x 269, 275 n.6 (4th Cir. 2010) (same).

Plaintiffs allege that all defendants, including the Haynes Defendants, and others violated Section 1962(d) "by entering into a series of agreements… to violate § 1962(c)."  (Compl., at ¶ 186.)  But the Haynes Defendants are alleged to have done nothing more than extend credit and provide services to entities in the marketplace.  Such an expansion of RICO is inappropriate given the "caution" courts of the Fourth Circuit must exercise in interpreting RICO.  *United States v. Pinson*, 860 F.3d 152, 164 (4th Cir. 2017) (citing *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010)).

### C.    Plaintiffs' claims under the Virginia usury statute must fail.

Much like their claims under RICO, Plaintiffs' claims against the Haynes Defendants under the Virginia usury statute fail for reasons beyond the holding of *Settlement Funding*.  Under Virginia law, a plaintiff may bring an action against any "person" who "tak[es] or receiv[es]" payments at more than the maximum rate of interest permissible under Virginia law.  Va. Code § 6.2-305(A); *but see* Va. Code § 6.2-1541 (limiting liability solely to a lender, and not "any person").  The Supreme Court of Virginia has previously ruled that the provisions of the Virginia usury statute must be construed "as it is written," and that courts may not expand the scope of liability under the statute beyond the words chosen by the legislature.  *Greenberg v. Com. ex rel. Atty. Gen. of Virginia*, 255 Va. 594, 600-02 (1998); *see also id.* at 601 (holding that the previous iteration of Va. Code § 6.2-1541 "permits recovery of restitution solely from the 'lender' and does

not impose liability on 'any person.'").

On its face, Virginia Code Section 6.2-305(A) permits a consumer to file an action seeking to recover excess payments "from the person taking or receiving such payments."  Va. Code § 6.2-305(A).  As written, this provision requires that the only proper defendant is a person that takes or receives payments from a consumer.[12]  There is no allegation in the Complaint that Haynes was "taking or receiving" payments from Plaintiffs, nor could Plaintiffs so plead.  Rather, the Haynes Defendants received compensation solely through a finder's fee *from Think Finance*.  Compl. ¶ 38.  Without a well-pled factual allegation that the Haynes Defendants took or received payments from the Plaintiffs, there can be no liability against the Haynes Defendants under Section 6.2-305(A).  And, because none of the Haynes Defendants was a lender *to Plaintiffs*, none can face liability under Va. Code § 6.2-1541.  *Greenberg*, 255 Va. at 601.  To hold otherwise "would be to invade the province of the legislature and expand the scope of liability," for Section 6.2-305(A). *Id.* at 602.

### D.    The Haynes Defendants have not been unjustly enriched.

In attempting to plead a cause of action for Unjust Enrichment, Plaintiffs again ignore the holdings of the Supreme Court of Virginia. Under Virginia law, in order to state a viable claim for unjust enrichment against the Haynes Defendants, Plaintiffs must allege: "(1) [Plaintiffs] conferred a benefit on [the Haynes Defendants]; (2) [the Haynes Defendants] knew of the benefit and should

---

[12]    Under title 6.2 of the Virginia Code, a "Person" is defined as "individual, corporation, partnership, association, cooperative, limited liability company, trust, joint venture, government, political subdivision, or other legal or commercial entity," Va. Code § 6.2-100.  This general definition of "Person" under Title 6.2 fails to include a provision expanding the definition to include "members, officers, agents, and employees," despite the legislatures' specific use of such a definition in setting forth criminal penalties associated with usurious transactions.  *See* Va. Code § 6.2-1540 ("Any person, including the members, officers, directors, agents, and employees of an entity, who violates or participates in the violation of any provision of § 6.2-1501 is guilty of a Class 2 misdemeanor.").  As is clear from *Greenberg*, if the Legislature had desired to expand the potential ambit of liability under Section 6.2-305(A) beyond just the entity receiving or taking payments from consumers, it could have done so by using the language contained in provisions such as Section 6.2-1540.  *Greenberg*, 255 Va. 600-02.

reasonably have expected to repay [Plaintiffs]; and (3) [the Haynes Defendants] accepted or retained the benefit without paying for its value." *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008). Plaintiffs have failed as to all three elements.

Plaintiffs allege that the Haynes Defendants have been unjustly enriched because Plaintiffs voluntarily repaid loans that are void under Virginia usury law. That claim must fail for the reasons set forth above in Section III.A. *See, e.g., Anderson v. HSBC Bank Nev., N.A.*, 2012 U.S. Dist. LEXIS 146814 (C.D. Cal. Oct. 11, 2012) ("As described above, however, the substantive Nevada law upon which Plaintiff relies is preempted and/or inapplicable. Plaintiff's unjust enrichment claim is, therefore, dismissed.").

To the extent the Court wishes to look beyond the holding of *Settlement Funding*—and it should not—Plaintiffs have failed to demonstrate the required elements of an unjust enrichment claim. The rational in *Schmidt* is instructive. In *Schmidt*, a plaintiff appealed from the grant of a demurrer on a cause of action for unjust enrichment. *Id.* Plaintiff there had specifically alleged in his complaint that the defendant had made an illegal loan to plaintiff under the laws of Virginia and, as such, the defendant "ha[d] no right to retain the money that it received from [plaintiff] in excess of the amount it lent to [plaintiff] and is obligated by natural justice and equity to refund the money to [plaintiff]." *Id.* On those facts, the Supreme Court recognized that plaintiff "did not plead sufficient factual allegations in his amended complaint to state a cause of action for unjust enrichment." *Id.*

The allegations here are no different, and require a similar result. Specifically, Plaintiffs allege they "conferred a benefit on Defendants when they repaid the void loans; Defendants knew or should have known of the benefit; and Defendants have been unjustly enriched through their receipt of any amounts in connection with the unlawful loans." (Compl. at ¶ 207.) Leaving aside

-29-

the conclusory nature of these allegations, even if the Court were to credit Plaintiffs' allegations, such allegations are, at their core, identical to those in *Schmidt*, and should be dismissed for the same reasons.  Further, there is no plausible allegation that Plaintiffs directly conferred any *benefit* upon *the Haynes Defendants*.  Plaintiffs made payments to the sovereign Native American lenders that Plaintiffs freely contracted with, at a rate legal under the choice of law provision Plaintiffs contracted for.  Plaintiffs have never had any interactions with the Haynes Defendants, let alone conferred any benefit upon them such that it would be unjust for the Haynes Defendants to retain that benefit.  Such allegations, without more, do not state a cause of action for unjust enrichment and the cause of action should be dismissed.

## IV.    <u>CONCLUSION</u>

Plaintiffs' Complaint makes claims against the Haynes Defendants, over whom this Court does not have jurisdiction and asserting claims which are not viable under Virginia law.  While these claims should ultimately be resolved through individual arbitration as required by the loan agreements, on the merits Plaintiffs claims are simply inadequate as a matter of law.  Plaintiffs may be dissatisfied with the state of Virginia law, but the loans Plaintiffs accepted contain valid choice-of-law clauses which render their loans lawful under the holding of *Settlement Funding*.  And, importantly, Plaintiffs have failed to plead required elements for all of their claims.

For these reasons, Defendants Haynes Investments, LLC, L. Steven Haynes, and Sovereign Business Solutions, LLC, by counsel, requests that the Court enter an Order: (1) granting the Haynes Defendants' Motion; (2) dismissing Plaintiffs' Class Action Complaint with prejudice; and (3) granting the Haynes Defendants such further relief as is appropriate.

**HAYNES INVESTMENTS, LLC, L. STEVEN HAYNES, and SOVEREIGN BUSINESS SOLUTIONS, LLC**


By: /s/ Timothy St. George
David N. Anthony
Virginia State Bar No. 31696
Timothy St. George
Virginia State Bar No. 77349
TROUTMAN SANDERS LLP
1001 Haxall Point Richmond, Virginia
23219 Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com
Email: tim.stgeorge@troutmansanders.com

Richard L. Scheff (PA ID No. 35213) (PHV)
Jonathan P. Boughrum (PA ID No. 91019) (PHV)
David F. Herman (PA ID No. 318518)(PHV)
MONTGOMERY MCCRACKEN
WALKER & RHOADS, LLP
1735 Market Street, 19th Floor
Philadelphia, PA  19103
Telephone:  215.772.7502
Email:  rscheff@mmwr.com
*Counsel for Defendants*
*Haynes Investments, LLC, Sovereign Business*
*Solutions, LLC, and L. Steven Haynes*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of July, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY & CRANDALL PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA  22030
Telephone: 703-424-7570
Facsimile: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
*Counsel for Plaintiffs*

Leonard A. Bennett
Craig C. Marchiando
Elizabeth W. Hanes
CONSUMER LITIGATION ASSOCIATES
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA  23601
Telephone: 757-930-3660
Facsimile: 757-930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
Email: Elizabeth@clalegal.com
*Counsel for Plaintiffs*

James W. Speer
VIRGINIA POVERTY LAW CENTER
919 E. Main Street, Suite 610
Richmond, VA  23219
Telephone: 804-782-9430
Facsimile: 804-649-0974
Email: jay@vplc.orga
Counsel for Plaintiffs

/s/ Timothy J. St. George
Timothy St. George
Virginia State Bar No. 77349
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1254
Facsimile: (804) 698-5118
Email: tim.stgeorge@troutmansanders.com